UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARLENE COLEMAN,

     Plaintiff,

v.                                                                  Case No:   6:14-cv-527-Orl-22TBS

STARBUCKS,

     Defendant.

## ORDER

     This matter comes before the Court on Defendant Starbucks Corporation's motion to compel pro se Plaintiff Darlene Coleman to attend her deposition and respond to interrogatories and requests for production, and for the imposition of sanctions (Doc. 42). The motion is due to be granted in part and denied in part.

## Background

     Plaintiff filed this employment discrimination action against Defendant, and sought leave to proceed *in forma pauperis* (Docs. 1-2).   The Court reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), and dismissed it without prejudice, after finding that Plaintiff had not stated a claim for which relief could be granted (Doc. 8).   Plaintiff's amended complaint met the same fate (Doc. 16).   However, the Court found that Plaintiff's second amended complaint adequately stated a claim and allowed her to proceed *in forma pauperis* (Docs. 20-22).   Defendant filed its answer and affirmative defenses on September 9, 2014 (Doc. 27).

     On October 28, 2014, the parties met for their initial case management conference (Doc. 42 at 2; Doc. 43 at 2).   During the meeting, Defendant served interrogatories and

requests for production of documents on Plaintiff (Doc. 42 at 2; Doc. 43 at 2).   Plainitff told Defendant's lawyer she "was having to move again[, and] it would take [her] some time to review" the discovery requests and that she didn't have a lot of what Defendant was requesting (Doc. 43 at 2).   Defendant's lawyer told Plaintiff to "do the best you can," adding that he would also give her an extra two weeks, and "if you need more time let us know."   (Id.).

The Court's Case Management and Scheduling Order ("CMSO") established a deadline of November 10, 2014, for the parties to make their mandatory initial disclosures, and a deadline of May 1, 2015, to complete all discovery (Doc. 39).   Plaintiff never furnished her initial disclosures in violation of FED. R. CIV. P. 26(a)(1)(A) and the CMSO (Doc. 42 at 2).

On November 14, 2014, Plaintiff told Defendant's lawyer that she was "going through some hard times" and that the only way to reach her was through her P.O. Box (Doc. 43 at 2).   In December 2014, she spoke with Defendant's lawyer about the manner in which she would produce documents (Id.).   The Court does not know whether Plaintiff's failure to serve her initial disclosures was discussed in either of these conversations, or in any subsequent communications between the parties.

On January 29, 2015, Plaintiff and Defense counsel spoke again regarding Defendant's interrogatories and requests for production (Doc. 43 at 3).   During the conversation, Plaintiff complained that a lot of the information Defendant was requesting was "personal and didn't pertain to the case."   (Id.).   Plaintiff also wondered why Defendant was asking her to provide her EEOC charge, right to sue letter, and personnel file since Defendant should already have that information (Id.).   On February 6, Plaintiff once again complained about Defendant's requests for documents she believed it already

had (Id.).   Plaintiff told Defendant's lawyer that she was "not giving [Defendant] anything until they provide me with those documents" and that she "didn't feel right giving them my personal information that had nothing to do with this case."   (Id.).

On Thursday, April 16, 2015, Defendant's lawyer sent Plaintiff a letter and email inquiring about scheduling her deposition for the week of April 27 (Doc. 42-4; Doc. 42-5 at 1).   Plaintiff denies receiving the email, but admits she got the letter, postmarked Friday, April 17, on the following Monday (Doc. 43 at 5).   That Monday, April 20, Defendant's lawyer sent Plaintiff another email, which she did receive, attempting to schedule her deposition for the week of April 27 (Doc. 42-4; Doc. 43 at 5).   Counsel for Defendant also sent Plaintiff a letter dated April 20, postmarked April 21, in which he sought to schedule her deposition (Doc. 42-5).   In the letter, Defendant's lawyer said "[i]f I do not hear back from you, I will have no choice but to file a motion with the Court seeking sanctions and requesting that your case be dismissed."   (Doc. 42-5).   The emails and letters say nothing about Plaintiff's failure to serve her initial disclosures or responses to the interrogatories and document requests (Docs. 42-4, 42-5).   Defendant's lawyer also attempted to contact Plaintiff by phone, but the number was disconnected (Doc. 42 at 2-3).   On the day before the deadline to complete all discovery, Defendant filed its motion to compel (Doc. 42).

## Discussion

### Plaintiff's Deposition

Federal Rule of Civil Procedure 26 states that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," unless a court order provides otherwise.   FED. R. CIV. P. 26(b)(1).   This broad authorization reflects the intent of the discovery rules that trials in federal courts should be

a search for the truth and should not be "carried on in the dark."   <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947).

A party may take any other party's deposition without obtaining leave of court. FED. R. CIV. P. 30(a).   To depose a person, whether or not that person is a party to the litigation, a party "must give reasonable written notice to every other party" stating "the time and place of the deposition and, if known, the deponent's address."   FED. R. CIV. P. 30(b)(1).   Local Rule 3.02 requires a party to provide 14 days' notice to the deponent and all other parties prior to taking a deposition.   If a party fails to appear for a properly noticed deposition, the court may impose sanctions.   A motion for sanctions must contain a certification that the movant has in good faith conferred with the deponent in order to obtain the deponent's testimony without court action.   FED. R. CIV. P. 37(d)(1)(A)(i).

Defendant waited until 15 days before the discovery deadline to begin attempting to reach Plaintiff to schedule her deposition.   The parties disagree about whether Defendant actually emailed Plaintiff on April 16, but this is immaterial.   Email is only a permissible method of serving litigation papers if the person to be served has consented in writing.   FED. R. CIV. P. 5(b)(2)(E).   Defendant has not produced Plaintiff's written consent to service by email and does not allege that Plaintiff has provided such consent. Even if Plaintiff had consented, she informed Defendant that she could only be reliably reached by U.S. mail.   Consequently, Defendant could not rely on email as its sole means of communication with Plaintiff.

The letter postmarked April 17 was mailed to Plaintiff's post office box, per her instructions.   Had it contained a notice of taking Plaintiff's deposition (it did not), then under Local Rule 3.02, the earliest the deposition could have been scheduled was May 1, which was the discovery deadline.   Plaintiff received the letter on Monday–the earliest

date Defendant could reasonably expect her to receive it.   Yet, the following day, Defendant sent a letter threatening Plaintiff with sanctions and thus impliedly accusing her of not cooperating with Defendant's efforts to schedule her deposition.

Defendant has never served a notice of taking Plaintiff's deposition.   Indeed, after midnight on April 18, it could not do so since Local Rule 3.02's notice requirement would have put the date of the deposition beyond the discovery deadline.   Courts in this district do not require a party to serve a deposition notice as a prerequisite to serving a motion to compel, and will grant a motion to compel when a party refuses to schedule their deposition.   But, Defendant has cited no case where a court sanctioned a deponent or ordered a deposition where the moving party waited until barely two weeks before the discovery deadline to ask about the deponent's availability.   Accordingly, Defendant's motion to compel Plaintiff's deposition is **DENIED**.

Responses to Interrogatories and Requests for Production

Federal Rule of Civil Procedure 33 allows a party to serve up to 25 interrogatories on an adversary.   FED. R. CIV. P. 33(a)(1).   The responding party must answer or object to the interrogatories within 30 days.   FED. R. CIV. P. 33(b)(2).   Objections not raised in a timely manner are waived.   FED. R. CIV. P. 33(b)(4).   "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."   FED. R. CIV. P. 33(b)(3).

Requests for production are governed by Rule 34.   Parties may serve requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents, electronically stored information, or other 'tangible things' that are "in the responding party's possession, custody, or control."   FED. R. CIV. P. 34(a)(1). Requests for production "(A) must describe with reasonable particularity each item or

category of items to be inspected; (B) must specify a reasonable time, place, and manner for the inspection...; and (C) may specify the form or forms in which the electronically stored information is to be produced."   FED. R. CIV. P. 34(b)(1).   The recipient of a request for production has 30 days to respond.   FED. R. CIV. P. 34(b)(2)(A).   For each request, the responding party "must either state that inspection ... will be permitted as requested or state an objection to the request, including the reasons."   FED. R. CIV. P. 34(b)(2)(B).   Unlike Rule 33, Rule 34 does not explicitly provide that untimely objections are waived, but most courts hold that they are.   See, e.g., Wynmoor Community Council, Inc. v. QBE Ins. Corp., 280 F.R.D. 681, 685 (S.D. Fla. Mar. 5, 2012).

When a party fails to answer interrogatories or produce documents in response to a proper request, the requesting party can move for an order compelling discovery responses.   FED. R. CIV. P. 37(a)(3)(B)(iii), (iv).   "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request is "treated as a failure to disclose, answer, or respond."   FED. R. CIV. P. 37(a)(4).

Including the extra two weeks Defendant gave Plaintiff, her responses to the interrogatories and requests for production were due on December 11, 2014.   Plaintiff has not answered the interrogatories, responded in writing to the requests to produce, or produced the requested documents.   By failing to formally or properly respond, Plaintiff has waived her objections to Defendant's interrogatories and requests for production. Ordinarily, the Court would stop here and grant Defendant's motion but two issues require the Court's attention: the overbroad nature of Defendant's discovery requests and the timing of the motion to compel.

FED. R. CIV. P. 26(g)(1) requires a party's attorney, or the party personally, if

unrepresented, to sign every discovery request, response, objection, or disclosure.   The

signature represents the attorney or party's certification

> that to the best of the person's knowledge, information, and
> belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct
> > as of the time it is made; and
> >
> > (B) with respect to a discovery request, response, or
> > objection, it is:
> >
> > > (i) consistent with these rules and warranted by existing
> > > law or by a nonfrivolous argument for extending,
> > > modifying, or reversing existing law, or for establishing
> > > new law;
> > >
> > > (ii) not interposed for any improper purpose, such as to
> > > harass, cause unnecessary delay, or needlessly
> > > increase the cost of litigation; and
> > >
> > > (iii) neither unreasonable nor unduly burdensome or
> > > expensive, considering the needs of the case, prior
> > > discovery in the case, the amount in controversy, and
> > > the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g)(1).   If a certification violates Rule 26(g)(1) "without substantial

justification, the court, on motion or on its own, must impose an appropriate sanction on

the signer, the party on whose behalf the signer was acting, or both."   FED. R. CIV. P.

26(g)(3).

The Advisory Committee Note states that Rule 26(g) "imposes an affirmative duty

to engage in pretrial discovery in a responsible manner that is consistent with the spirit

and purposes of Rules 26 through 37."   97 F.R.D. 165, 218 (1983).   This provision "is

designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.

The subdivision provides a deterrent to both excessive discovery and evasion by

imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."   Id.

Unlike FED. R. CIV. P. 11, which imposes parallel requirements on pleadings, motions, and other papers filed with the court and threatens violators with sanctions, Rule 26(g) "has not been much used."   8A Wright, Miller & Marcus, Federal Practice & Procedure § 2052 (3d ed. 2010).   This is surprising since discovery abuse is widely perceived to be one of the most expensive problems in modern litigation.   Concern about overbroad discovery requests doubtless provided some of the motivation for the Rules Advisory Committee to propose making proportionality concerns "an express component of the scope of discovery" in the pending 2015 amendments to Rule 26.   If courts enforced Rule 26(g) more assertively, counsel and parties would likely take their obligation to tailor their discovery requests more seriously.   Cf. Mancia v. Mayflower Textile Services Co., 253 F.R.D. 354, 359 (D. Md. 2008) ("The failure to engage in discovery as required by Rule 26(g) is one reason why the cost of discovery is so widely criticized as being excessive–to the point of pricing litigants out of court.").

Defendant propounded 21 interrogatories, preceded by 7 ½ pages of instructions and definitions,[1] to Plaintiff.   Some of the interrogatories are grossly overbroad or seek information with no conceivable relevance to the litigation.   For example, interrogatory No. 2 asks Plaintiff to "[l]ist the name of any current spouse, if applicable, all former spouses, the date and place of each marriage, date and place of each divorce, along with the state, county, and case number of any divorce, separation, or related proceedings."

---

[1] The definitions appear to have been slapped together haphazardly; number 11 is missing while number 14 appears twice, and there is a part "D" under definition number 2 but no "A," "B," or "C." (Doc. 42-1 at 4-7).   Also, some of the definitions do not make any sense.   For example, "data" is defined as "to state" certain information (e.g., date, author, custodian) about a document or oral communication (Doc. 42-1 at 7).   "Data" is not a verb in common English, and Defendant does not use it like one.

(Doc. 42-1 at 10).   The Court fails to see what relevance Plaintiff's marital history has to this lawsuit alleging racial discrimination and retaliation in employment.

Interrogatory number 14 asks Plaintiff to "[i]dentify (by manufacturer, type, model number and phone-number, as applicable) each and every electronic computing, communication or data storage device you have owned or leased from the past five years to present."   (Doc. 42-1 at 22).   The interrogatory explains that this includes but is not limited to "computers, tablets, cellular phones, iPhones, iPads, smartphones, personal digital assistants, USB devices, flash drives, thumb drives, DVD's, CD's, external hard drives, cameras, video recorders, or any other electronic computing, communication or data storage device."   In an age where all media is digital, this is an expansive request indeed.   It asks Plaintiff not only to identify every cell phone, computer, or tablet she has owned in the past five years, but also to itemize her CD and DVD collection (past and current) and list every CD and DVD she has borrowed from the local library.   More than a few people would find compiling such a list to be a time consuming task, and it goes without saying that such an expansive request implicates privacy concerns.   Yet, in propounding this interrogatory, Defendant made no effort to limit its scope to devices that contain or contained information related to the litigation, or, for that matter, to limit its scope in any other way.   It is no wonder Plaintiff "didn't feel right giving [Defendant her] personal information that had nothing to do with this case."   (Doc. 43 at 3).

Along the same lines, interrogatory number 13 asks for "all personal email addresses..., social networking accounts..., back-up or other on-line or third-party storage accounts..., or any other on-line sites, services, blogs, wikis, or message boards that you have used or maintained from the past five years to present (Doc. 42-1 at 21).   The residual clause ("any other on-line sites, services, blogs, wikis, or message boards") is

grossly overbroad if interpreted literally as a request for Plaintiff's internet browsing history for the past five years.   In context, it could be interpreted more narrowly, to include only those "sites, services, blogs, wikis or message boards" which Plaintiff has maintained or provided information to.   But, even with this narrower interpretation, the interrogatory is overbroad.   Like Interrogatory number 14, its scope is not limited by subject matter and, given that many people provide information to a wide range of on-line sites and services (e.g., product reviews, comments or "likes" on news articles, taking online surveys or voting in online polls), its reach is expansive.   It would have been interesting to see what happened if Plaintiff had copied interrogatories 13 and 14 and propounded them to Defendant.

Interrogatory number 16 asks Plaintiff whether she has "ever been a party or testified under oath in any legal proceeding," and if so, to "state in detail: the caption, court and docket number in the action; the name, telephone number and address of the parties in any such proceedings; the location the action was venued or the deposition or administrative proceeding was conducted; the name, telephone number and address of all attorneys representing the parties in any such legal proceedings; and the general subject matter and outcome of any such legal proceeding."   This interrogatory would be unproblematic if it simply asked for caption, court name, and docket number, but it goes too far in asking Plaintiff to track down the names, addresses, and telephone numbers of all attorneys in an action in which she may not have even been a party.   The discovery rules do not permit a party to drown his adversary in busywork.

Defendant's production requests are notable for their number and redundancy.   In total, Defendant propounded 89 requests for production of documents in this simple, one-plaintiff-versus-one-defendant employment discrimination suit (Doc. 42-2).   Of these, 56

seek "[a]ny documents which refer or relate to, support, or evidence, the allegation

contained in" a particular numbered paragraph of the amended complaint.   Request 67

asks for "[a]ny documents which refer or relate to, or evidence, any of the allegations of

the Amended Complaint, including, but not limited to those documents Plaintiff intends to

introduce into evidence or use in any manner during the course of this litigation, including

trial."   Apparently not satisfied that its first 60 requests were sufficient, Defendant then

asked for, *inter alia*:

> 61. Any ... documents regarding any matter relating to
> Plaintiff's claims in this case."
>
> 67. Any documents which refer or relate to, or evidence any of
> the allegations of the Amended Complaint....
>
> 76. Print-outs, screen shots or other documents from any
> internet website, blog or social networking site to which
> Plaintiff has posted information or through which she has
> communicated, including but not limited to Twitter, Facebook,
> YouTube, MySpace and/or LinkedIn that reference Plaintiff's
> employment status, or relationship with Defendant during the
> time period spanning January 2012 to present.
>
> 86. To the extent not produced in response to Requests for
> Production Nos. 1-85 above, produce all ESI created, sent,
> received or stored using any of the email accounts, social
> networking accounts, professional networking sites, back-up
> or other on-line third-party storage accounts, or other on-line
> sites, services, blogs, wikis, or message boards, identified in
> response to Interrogatory No. 13, that in any way pertain to
> your allegations and claims in this lawsuit, any circumstances
> or activities relating to this lawsuit (barring any privileged or
> work-product material), your employment with Defendant, and
> your state of mind, emotions, mental health or mental
> condition,
>
> 87. To the extent not produced in response to Requests for
> Production Nos. 1-85 above, produce all electronically stored
> information created, sent, received or stored using any of the
> electronic computing, communication or storage devices
> identified in response to Interrogatory No. 14, including, but
> not limited to, word processing documents, emails, text
> messages, photographs, video recordings, and audio

>     recordings, that in any way pertain to your allegations and
>     claims in this lawsuit, any circumstances or activities relating
>     to this lawsuit (barring any privileged or work-product
>     material), your employment with Defendant, and your state of
>     mind, emotions, mental health or mental condition.
>
>     89. Any documents which have not been produced in
>     response to this request for production but which relate to,
>     evidence or support your allegations in this litigation.

(Id.).

Defendant's approach to crafting document production requests imposes an unreasonable burden on Plaintiff.   She is obliged to spend time reading through Defendant's bloated list of requests and then assert specific objections to each one that is objectionable.   If and when motion practice ensues, this also imposes an unnecessary burden on the Court.   Furthermore, Rule 34(b)(2)(E)(i) requires a party to either "organize and label" documents it produces "to correspond to the categories in" the document production requests, or produce the documents "as they are kept in the usual course of business."   Propounding 89 mostly redundant document production requests in an ordinary employment discrimination suit effectively eliminates the first option.

The Court makes no express finding as to whether Defendant and its counsel violated Rule 26(g)(1) in this case.   But, it is hard to imagine that an attorney who "stop[ped] and th[ought]" about whether these discovery requests were reasonable, "considering the needs of the case, ... the amount in controversy, and the importance of the issues at stake in the action," would have served them on his client's adversary.   An attorney who propounds discovery requests without considering these factors cannot in good faith make the certification required by Rule 26(g)(1).

The timing of Defendant's motion to compel is also problematic.   "While there is no local or federal rule setting a precise deadline for the filing of a motion to compel, it is

clear that any such motion must be filed within a "reasonable" time period."   <u>Hoai Thanh</u>

<u>v. Hien T. Ngo</u>, Civ. No. PJM 11-1992, 2013 WL 1976009, at *1 (D. Md. May 10, 2013);

<u>see also</u> <u>Jordan v. City of Detroit</u>, No. 11-cv-10153, 2012 WL 2526927, at *4 n. 7 (E.D.

Mich. July 29, 2012) (explaining that the fact that parties waited until the discovery

deadline to bring disputes to the court's attention made their "requests for sanctions and

protective orders less persuasive than they would have been if the issues had been

timely brought to the court's attention"); <u>Jackson v. Casio Phonemate, Inc.</u>, No. 98 C

6250, 2001 WL 740518, at *6 (N.D. Ill. June 29, 2001) (collecting cases).   When parties

fail to raise discovery disputes with the court in a timely manner, those disputes can fester

into serious case management problems.   Moreover, waiver principles apply in the

discovery context just as they do in other aspects of litigation.   <u>See, e.g.</u>, <u>AG Equipment</u>

<u>Co. v. AIG Life Ins. Co.</u>, No. 07-CV-556-CVE-PJC, 2008 WL 5205192, at *2 (N.D. Okla.

Dec. 10, 2008) (citing <u>Continental Industries, Inc. v. Integrated Logistics Solutions LLC</u>,

211 F.R.D. 442 (N.D. Okla. 2002); <u>Buttler v. Benson</u>, 193 F.R.D. 664, 666 (D. Colo.

2000)); <u>Procaps S.A. v. Patheon, Inc.</u>, No. 12-24356-CIV, 2014 WL 1230737, at *2 (S.D.

Fla. Mar. 25, 2014) (discussing local rule requiring discovery motion to be filed within 30

days of "the occurrence of grounds for the motion").[2]

　　This is not to say that a party should rush into court whenever an opposing party

fails to respond to a discovery request.   Indeed, Rule 37(a)(1) and Local Rule 3.01(g)

require a party to confer in good faith in an effort to resolve discovery disputes before

filing a motion to compel.   When a court is too eager to apply waiver principles to

---

[2] Plaintiff does not raise the issue of waiver or the timing of Defendant's motion in her response. While it is true that "claims of waiver may themselves be waived," <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991), the Court considers *sua sponte* the timeliness of Defendant's motion because Defendant's delay raises case management concerns.

discovery motions, it risks punishing parties for attempting to resolve discovery disputes in private.   A party may have less patience for efforts to resolve a discovery dispute out of court if it knows the court will measure reasonableness of any delay from the date of the discovery violation.   In determining whether Defendant brought this motion to compel in a reasonable time, the Court will measure Defendant's diligence from the point when the parties reached an obvious impasse and the need for a discovery motion became clear.

The parties conferred in late January and early February in an effort to resolve their dispute over Defendant's interrogatories and request for production of documents (Doc. 43 at 3).   On February 6, Plaintiff told Defendant she was not furnishing any discovery to it until Defendant provided certain documents to her, and that she was concerned about giving Defendant her personal information that had nothing to do with the case.   After this, the parties' discussions apparently stopped.   At this point, Defendant knew, or at least should have known Plaintiff was not going to respond to its discovery requests absent an order compelling disclosure.   Instead of promptly moving for an order to compel, Defendant did nothing for two months, finally filing its motion on the eve of the discovery deadline.

Due to the untimeliness of Defendant's motion, the overbreadth, and duplicative nature of its discovery requests, which are wholly out of proportion to the needs of the case, the amount in controversy, and the importance of the issues at stake, Defendant's motion to compel responses to its interrogatories and requests for production is **DENIED**.

Plaintiff's Initial Disclosures

The CMSO set a November 10, 2014 deadline for Plaintiff to make her initial disclosures.   The rule requires, with exceptions not applicable here, that Plaintiff provide

the following information to the Defendant without awaiting any discovery request:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
>
> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

FED. R. CIV. P. 26(a)(1)(A).   Now, more than six months later, Plaintiff still has not complied.   When a party fails to timely make initial disclosures, the court may enter an order compelling disclosure and impose appropriate sanctions.   FED. R. CIV. P. 37(a)(3)(A).   The Court **GRANTS** Defendant's motion to compel Plaintiff to make her initial disclosures.   Plaintiff shall make her initial disclosures as required by Rule 26(a)(1)(A) and the CMSO no later than June 8, 2015.

**DONE** and **ORDERED** in Orlando, Florida on May 22, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

      Plaintiff, pro se
      Counsel of Record